**SOUTHEAST TEXAS HOMECARE SPECIALISTS, INC., Martin Fontenot, and Stacie Fontenot, Appellants,**

v.

**TRIANGLE BILLING, INC., Appellee.**

No. 09–00–215 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 23, 2001.

Decided May 3, 2001.

James W. Henges, Lewis & Associates, Beaumont, for appellants.

Bob K. Monk, McPherson, Monk, Hughes, Bradley & Wimberley, L.L.P., Port Arthur, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Justice.

Triangle Billing, Inc., sued Southeast Texas Homecare Specialists, Inc., and its owners, Martin Fontenot and Stacie Fontenot, for breach of contract, quantum meruit, and fraud. After a bench trial, Trian-

gle recovered a judgment for $20,000, plus prejudgment interest in the amount of $4,673.97, and attorney fees in the amount of $7,000. Ten issues are presented on appeal.

■ Issue one challenges the legal and factual sufficiency of the evidence to support a judgment for breach of contract, quantum meruit, or fraud. In reviewing a no evidence point, we consider only the evidence and inferences which support the trial court's findings, and disregard all evidence and inferences to the contrary. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). Triangle Billing, Inc., is a corporation established on November 21, 1996, by its owner and sole officer, Gloria Degadillo. Degadillo incorporated Triangle as an entity formed with the purpose of performing accounting for Southeast Texas Homecare Specialists, Inc., a business owned at that time by Tom Massey. Tom Massey's father, Bob Massey, is Degadillo's boyfriend. Triangle's facilities were located in Southeast's offices, where Triangle paid no rent. Degadillo testified that from October 1996 through February 1997, she worked evenings and weekends setting up the corporation. Degadillo testified that she assisted Southeast in getting licensed to receive Medicare for seeing patients and helped get the corporation running, using Triangle's computers. Degadillo attended a training session at Lewis Computer Services so that she could operate the billing software and train Southeast employees on the use of that software. She paid for the class on November 2, 1996, and attended from November 11 through 13, 1996, before the plaintiff came into existence. On December 18, 1996, Degadillo signed a lease agreement on behalf of Triangle, leasing several computer systems for a forty-eight month term, at a rate of $399.26 per month. That day Triangle paid two months in advance, plus sales tax and a documentation fee, for a total of $920.41.

Triangle was going to perform all accounting functions for the business, including accounts payable, accounts receivable, W2's, end of the year reports, an initial report to the State allowing them to receive a license, warehousing functions of supplies, and the specialized functions for homecare Medicare billing. Massey and Gloria agreed that Triangle was to be compensated at the rate of nine dollars per billing. There was no signed written contract.

Stacie Fontenot had been involved in Southeast from the time Tom Massey purchased the corporation. Sometime in November, Massey decided to fire Stacie Fontenot. Instead, Stacie and Martin Fontenot bought Southeast from Massey. On January 8, 1997, Martin Fontenot signed a $35,000 short term promissory note and the Fontenots purchased Southeast. According to Degadillo, the Fontenots said they would have the exact same agreement as Tom Massey. Concerned that she did not have a signed contract, Degadillo told Martin Fontenot that she would not accept delivery of the computers without having a signed contract. Martin Fontenot told her that she could trust him, that he would agree to the contract and "just to get it to him." The computers were installed at Southeast's offices on January 23, and Southeast obtained its license. Degadillo gave Fontenot the proposed contract, but he never signed it in spite of Degadillo's repeated requests. Stacie Fontenot told Degadillo that a lawyer was looking at the contract and that Martin Fontenot was going to sign the contract but was busy. Eventually, Degadillo and the Fontenots began negotiating for Degadillo to work as an employee of Southeast, as an alternative to the Trian-

gle contract. Degadillo first offered to work for $6,000 per month, then for $5,000, but the Fontenots rejected both offers. Degadillo discovered that the Fontenots had checked into Bob Massey's criminal history. Angry, Degadillo removed Triangle's computers from Southeast's offices on February 20, 1997. Southeast had no patients at the time, and Degadillo never prepared a single bill for Southeast.

Degadillo testified that she did not perform her services gratuitously, but because she expected to recap the benefits of having the Triangle contract allowing "either the nine dollar billing or some kind of agreement on a monthly basis." Degadillo admitted she would not have asked for payment if Fontenot had signed the contract. All of the conversations regarding the contract occurred after Massey sold the company. Degadillo claimed she performed accounting services between October 1996 and February 1997, for which she was seeking $27,000 in damages. She sought $4,000 in damages for accounting information and start-up costs, plus $15,000 for work performed between October 1996 and February 1997. Most of the work was performed while Massey owned Southeast, in anticipation of a contract yet to be formed. Although Degadillo is the sole owner of Triangle, there is no evidence of how much of the work she performed was in her capacity as owner or agent of Triangle. Any work performed by Degadillo before November 21, 1996, could not have been performed by Triangle, because Triangle did not yet exist. Triangle also requested $20,120 for the cost of the computers. The trial court awarded actual damages of $20,000. According to the trial court's findings of fact, the judgment awarded was $20,000 in actual damages suffered by Triangle for "incurring the cost of the computers." Thus, whatever personal services were provided by Degadillo, either in her individual ca-

pacity or on behalf of Triangle, did not form the basis of the damages assessed and do not support the judgment. The issue on appeal is whether Triangle could recover the full cost of the computer equipment under any one of the three causes of action found by the trial court.

■ Degadillo admitted there was no written agreement. The contract the Fontenots refused to sign had a forty-eight month term. As it was neither performable within one year, nor signed by someone authorized to sign for the party sought to be charged, the contract failed to satisfy the statute of frauds. TEX. BUS. & COMM. CODE ANN. § 26.01 (Vernon 1987). The judgment is not supportable on Triangle's breach of contract claim.

■ Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for services rendered or materials received. *Heldenfels Bros., Inc. v.. City of Corpus Christi*, 832 S.W.2d at 41; *Vortt Exploration Co. ., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). Although Triangle never prepared a single Medicare bill for Southeast, there is evidence that from January 23 through February 20, Southeast's payroll was prepared using Triangle's computers. Crucial to our analysis, however, is the fact that Triangle did not recover damages for *any* services. Triangle recovered solely for incurring the cost for the equipment. Triangle maintained its offices in Southeast's offices, and retained the computers when relations between the parties soured. On February 20 Degadillo removed the equipment from Southeast's offices, and at the time of trial one of the computers was being used by Degadillo's daughter and another was being used by Tom Massey in his furniture business. There is no evidence that Southeast ever took possession of the equipment, even

though it was installed at Southeast's offices for almost one month, because Triangle had its offices there and Degadillo was using the equipment. A cause of action under quantum meruit requires that the goods be actually received. As Triangle did not relinquish the computers to Southeast, it may not recover their entire cost in quantum meruit.

■ The elements of common law fraud are: 1) that a material representation was made; 2) it was false; 3) the speaker knew the representation was false when he made it, or he made the representation recklessly without any knowledge of its truth and as a positive assertion; 4) with the intention that it should be acted upon by the party; 5) that the party acted in reliance upon it; and 6) thereby suffered injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983).

■ The material representation at issue in this appeal is Martin Fontenot's promise that he would sign the Triangle contract once it was presented to him. Although the equipment lease was signed anterior to the representation, Triangle's detrimental reliance is established in the record. Degadillo testified that she informed Fontenot that she would not accept delivery of the computers without that promise. Joel McBride, an employee of the leasing company, testified that, "There is other paperwork that had to be signed after the delivery for it to be actually binded by the contract." Thus, there was a moment after the Fontenots acquired Southeast when Triangle could have avoided liability for the computers, but proceeded with delivery because an agent of Southeast assured the agent of Triangle that the contract would be executed.

■ The appellants argue there is no evidence of scienter. Intent to defraud, the proof of which depends upon the credibility of the witnesses, is a fact question invariably proven by circumstantial evidence and uniquely within the realm of the trier of fact. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434–35 (Tex.1986). Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. *Id.* When considered with the breach of promise to perform, however, even slight circumstantial evidence of fraud is sufficient to support a finding of fraudulent intent. *Id.* Although intent is determined at the time the representation is made, a party's intent may be inferred from his subsequent acts. *Id.*

Although the trial court found that "Martin and Stacie Fontenot, individually and personally, . . . represented Southeast Texas Homecare Specialists, Inc. had signed a contract on numerous occasions," Triangle's brief does not identify where in the record evidence may be found in support of this finding. In reviewing the record, we have found no evidence that either Martin or Stacie Fontenot told Triangle's representative that the contract had already been signed. That finding of fact is not supported by the evidence.

We must consider whether other circumstances support finding fraudulent intent. The events transpired in a relatively short period of time. Degadillo admitted that all of her conversations with Fontenot occurred after the Southeast transfer. Therefore, the promise must have been made after the Fontenots acquired Southeast but before installation of the computers, in other words between January 8 and January 23. Degadillo admitted that she presented the contract *after* the computers were installed. When Degadillo requested execution of the contract, Stacie Fontenot told Degadillo that a lawyer was looking at

the contract, and that Martin Fontenot was going to sign the contract but was busy. Realizing that the Fontenots were not going to agree to the Triangle contract, Degadillo engaged in personal employment negotiations before removing Triangle's equipment on February 20.

Although no contract had been presented when the promise was made, there is some evidence that the appellants were aware that the Triangle contract would include a remuneration clause of nine dollars per billing. Degadillo testified the Fontenots assured her that they would keep her on under the "same exact agreement" as Massey. Although Massey was paying nothing for Degadillo's work from October through January, there is evidence that Triangle's proposal was communicated to Southeast before January 23. In his deposition, Martin Fontenot apparently admitted that he was quoted nine dollars per billing, that he told Degadillo that amount was unreasonable, but she installed the computers anyway.

There is also evidence that at some point the Fontenots somehow acquired information on billing rates charged by another company. The trial court could infer that the Fontenots investigated alternatives to the Triangle contract, which in turn supports an inference of intent to not execute the contract at the time the inquiries were made. We find, however, no evidence that any inquiries were made before January 23. Although both Stacie Fontenot and Martin Fontenot testified that they did not sign the contract because another billing company charged one-third Triangle's price, equivocating conduct occurring only *after* the contract was presented does not support an inference that the appellants did not intend to enter into a contractual relationship days earlier when Martin Fontenot directed Degadillo to get the contract to him.

In *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 48–49 (Tex.1998), the plaintiff offered evidence that the defendant acted in a manner inconsistent with its contractual representations before the contract was signed. Here, however, we find no evidence of any prior or contemporaneous conduct inconsistent with the stated intent to sign the contract upon presentment. Although at some point the Fontenots acquired information about Triangle's competitor, whether they did so before or after Martin Fontenot made the representation at issue is a matter of pure speculation.

■ Finally, Martin Fontenot denied having promised to sign the Triangle contract. Like evidence of failure to perform, denial of a promise is a factor to consider, but standing alone does not constitute evidence that the defendant never intended to perform the promise. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992).

■ There is no evidence of any conduct from which the appellants' intent at the time of the promise might be inferred. The only circumstantial evidence of the appellants' intent to not enter into a contract with Triangle is the failure to sign the contract and the denial that the promise was made. The circumstantial evidence of the appellee's intention not to perform is so weak that it creates only a mere surmise or suspicion of its existence. *T.O. Stanley Boot Co.*, 847 S.W.2d at 222. When evidence of intent not to perform is so weak that it constitutes no evidence, it cannot support a verdict for fraud.

Point of error one is sustained. We reverse the judgment of the trial court and render judgment that Triangle Billing,

Inc., take nothing of its suit against Southeast Texas Homecare Specialists, Inc., and its owners, Martin Fontenot and Stacie Fontenot. As they would not afford additional relief to the appellants, we decline to address the remaining points of error.

REVERSED AND RENDERED.