In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-568 CV


____________________



NURY CHAPA, Appellant



V.



TONY GULLO MOTORS I, L.P. AND BRIEN GARCIA, Appellees






On Appeal from the County Court at Law Number 2


Montgomery County, Texas


Trial Court Cause No. 02-08-05341-CV






MEMORANDUM OPINION


 Appellant, Nury Chapa, claimed she was promised a Toyota Highlander Limited
by Gullo Toyota, but was provided a Toyota Highlander, a less expensive model. She
sued the dealership and its sales representative, Brien Garcia, for breach of contract, fraud,
and violation of the Deceptive Trade Practices Act. The jury found in her favor, and
awarded damages equal to the difference in value between the vehicle promised and the
one delivered, mental anguish, exemplary damages, additional DTPA damages, and
attorney's fees. However, the trial court determined the fraud, DTPA, mental anquish,
exemplary damages, and attorney fee findings were immaterial, and entered judgment
awarding damages for the difference in value between the vehicle promised and the one
delivered. 

 On appeal, Chapa contends the trial court erred in failing to render a judgment
which conformed to the verdict. By cross points, Gullo and Garcia argue the evidence was
insufficient to support damages for mental anguish and punitive damages, and the verdict
on punitive damages was excessive. We conclude the trial court erred in not entering a
judgment consistent with the verdict, and we suggest a remittitur of half of the punitive
damages against Gullo.

 Tex. R. Civ. P. 301 


 Rule 301 requires entry of a judgment that conforms to the jury verdict, unless
"upon motion and reasonable notice" the court determines a directed verdict would have
been proper or the jury's findings should be disregarded because they have no support in
the evidence. Tex. R. Civ. P. 301. Even if the jury findings are supported by the
evidence, a judgment notwithstanding the verdict still may be proper if a claim or defense
is barred as a matter of law or a jury answer is immaterial. United Parcel Serv., Inc. v.
Cengis Tasdemiroglu, 25 S.W.3d 914, 916 n.4 (Tex. App.--Houston [14th Dist.] 2000, pet
denied); Regal Constr. Co. v. Hansel, 596 S.W.2d 150, 154 (Tex. Civ. App.--Houston
[1st Dist.] 1979, writ ref'd n.r.e.). The judgment in this case says the trial court "has
disregarded some of the jury's answers as immaterial." Although not specified, it is
apparent all the jury findings were disregarded with the exception of the breach of contract
findings. 

 Gullo did not file a motion for judgment notwithstanding the verdict. Chapa argues 
the trial court violated Tex. R. Civ. P. 301 by sua sponte ignoring the jury's findings. She
also argues the jury's findings are supported by the evidence and are not immaterial. 
Appellees say they requested the trial court ignore the jury's findings when they filed their
responses to Chapa's motion for judgment, and they contend Chapa's remedy was properly
limited to breach of contract damages.

 We need not decide whether the response was a sufficient motion. The evidence
supported the verdict and the jury's findings were not immaterial. We hold the trial court
erred in entering a judgment notwithstanding the verdict. 

Sufficiency of the Evidence


 In reviewing a judgment notwithstanding the verdict, an appellate court must
determine whether there is any evidence to support the jury's findings. Mancorp, Inc. v.
Culpepper, 802 S.W.2d 226, 227 (Tex. 1990); Williams v. Bennett, 610 S.W.2d 144, 145
(Tex. 1980). The record is reviewed in a light most favorable to the findings, considering
only the evidence and inferences that support the findings. Navarette v. Temple Indep.
Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986); Chappell Hill Bank v. Lane Bank Equip.
Co., 38 S.W.3d 237, 243 (Tex. App.--Texarkana 2001, pet. denied). If there is more than
a scintilla of competent evidence to support the jury's findings, then the judgment
notwithstanding the verdict must be reversed. Southern States Transp., Inc. v. State, 774
S.W.2d 639, 640 (Tex. 1989); Navarette, 706 S.W.2d at 309. 

 Chapa's testimony provides more than a scintilla of evidence to support the jury
findings. Her testimony was disputed by appellees, but we must review the record to
determine if there is evidence that supports the jury's findings. Chapa offered evidence
that, after comparing the Toyota Highlander and the Toyota Highlander Limited, she
decided to purchase a Limited because of its features, including lumbar support seats. She
says the next day she offered her salesman, Garcia, $30,000.00 for the Highlander Limited
on the showroom floor, with the added options of a TV/VCR and Michelin tires. Garcia
took the offer to Gullo's management. He returned and said, "well, this car has been sold
and I can get you one, but the thing is that it will cost you $207.38 more." Chapa agreed. 
When Chapa returned to sign the contract, the contract indicated she was buying a "2002
Toyota." Chapa wrote "Limited," "Michelin tires," "TV" and "VCR" on the contract,
and she then signed it. As she tried to remove her copy from the multi-part form, Gullo's
finance manager took the document from her and said more signatures were needed. 
Chapa left with Gullo's promise that a copy of the contract would be mailed to her. She
never received the contract. 

 Chapa says that after Gullo received her $30,207.38 payment for the Highlander
Limited, Garcia called her to tell her the vehicle had arrived. When Chapa went to pick
it up, Garcia presented a Toyota Highlander, not a Highlander Limited. Chapa says she
refused to take delivery, and says Garcia explained, "Well, I was just showing it to you. 
This is what we got, and I wanted to show it to you." He acknowledged she had
purchased a Highlander Limited, and he assured her she would get one. Chapa told him
to call her when he got the Limited.

 A sales representative called Chapa again to say her car was ready. When she went
to retrieve the car, however, it was again a Highlander, not a Highlander Limited. Chapa
says she complained, but the sales representatives tried to persuade her to take the car. 
They explained that she should take the base model because it was difficult to get a
Limited. Chapa testified they promised Gullo would add the other features from the
Limited plus Michelin tires. Gullo would install lumbar support seats, and leather seats,
like those which are standard in a Limited. The TV/VCR option had been installed. 
Garcia told her that, since it was a Friday evening, nothing else could be done to the
vehicle over the weekend, so she could take the vehicle, and it would be picked up on
Monday. He assured her that the modifications would be complete in two days. They also
told her that the Highlander she was taking had a V-6 engine just like the Limited model. 

 Chapa agreed to take delivery of the Highlander, but she says before doing so, she
insisted on writing these promises on her new vehicle delivery check sheet. Chapa wrote
the missing Limited features on the new vehicle delivery check sheet, and she signed it. 
Garcia wrote her a "We Owe" form, which stated that Gullo owed her Michelin tires and
lumbar seats. He did not include all the other items; Chapa listed those on the delivery
check sheet, and she testified Garcia told her that was enough. 

 No one came to pick up the car, and Gullo never installed the promised items. 
When Chapa's requests to have the work done were not met, she went to Gullo Toyota to
speak with the sales manager, Brian Dubiski. Dubiski stated Chapa was "crazy, that [she]
didn't buy that [Limited]." Chapa says she protested that she had a "We Owe" form
which showed she bought a Limited, to which Dubiski responded, "[Y]ou have nothing. 
You are a nobody. It's your word against mine." When Chapa expressed shock at how
customers were treated, and said she would inform the media, Chapa says Dubiski
responded that no one would dare to go against Gullo because Gullo had power, and he
would show her by having her car towed away at her expense. Chapa requested the
promised work. Based on Dubiski's response, Chapa believed he was going to finish the
car. 

 Chapa testified that when the work was still not done after five days, she hired an
attorney to travel with her to Gullo Toyota. They met with Tony Gullo and Dubiski. 
When Chapa's attorney indicated that Chapa would return the car for a refund, Tony Gullo
said that he could not take the Highlander back because it had already been titled to Chapa,
and if they took it back, they would be forced to sell it as used. 

 At the meeting, Chapa's attorney requested a copy of the sales documents. Gullo
produced a contract reflecting Chapa had purchased the Highlander she received, as
referenced by a vehicle identification number on the document, and produced a New
Vehicle Delivery Check Sheet showing she had accepted delivery of the Highlander
without complaint. Chapa testified at trial that certain signatures had been forged. She
testified the signatures on two of the documents were that of her husband, whose death
predated the transaction. 

 Chapa testified that, at the meeting, Chapa told Gullo she had not signed those
documents. Gullo said she had. When asked whether Gullo would put in the lumbar
support seats, Gullo denied anyone from Gullo made the promise, saying "[T]his can't
be."

 Chapa produced her "We Owe" form regarding the promise to install lumbar seats.
Her attorney testified that, although Gullo had previously said they had provided her
attorney everything from their file, Gullo had not provided this document. Her attorney
testified Gullo called Garcia to his office and asked him whether he had in fact completed
the We Owe form. Garcia admitted he had promised Chapa these features. 

 Gullo's corporate representative, Dubiski, acknowledged at trial if Garcia told
Chapa he was giving her a Limited model, Gullo owed her a Limited. However, Dubiski
also testified that he did not believe the contract documents were forged. 

 From Chapa's testimony, the jury heard evidence from which the jury reasonably
could conclude that (1) she contracted to purchase a Limited, not a Highlander, (2)
appellees tried to persuade her to accept delivery of a Highlander, (3) appellees failed to
perform all promised modifications to the Highlander, (4) the signatures of Chapa and her
deceased husband were forged on Highlander documents, and (5) documents concerning
the Highlander Limited contract were replaced with the forged Highlander documents. 
Based upon the evidence, the jury reasonably could have found that appellees not only
breached their contract with Chapa, but they in fact never intended to provide her the
Limited at the price she paid. On her testimony, the jury could have concluded that Chapa
was fraudulently induced to part with her money for a vehicle appellees never intended to
deliver.

 Chapa's testimony of misrepresentations and forgery support a finding of an intent
to defraud. That a defendant made a statement knowing it was false may be established
by direct or circumstantial evidence. Burleson State Bank v. Plunkett, 27 S.W.3d 605, 613
(Tex. App.--Waco 2000, pet. denied). Failure to perform as promised, standing alone,
is no evidence of fraud, although it may be considered with other facts to establish
fraudulent intent. Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986). 
Circumstantial evidence of fraud, when considered with breach of a promise to perform,
is sufficient to support a finding of fraudulent intent. Libhart v. Copeland, 949 S.W.2d
783, 801 (Tex. App.--Waco 1997, no pet.); Hoechst Celanese Corp. v. Arthur Bros., Inc.,
882 S.W.2d 917, 925 (Tex. App.--Corpus Christi 1994, writ denied); see also Southeast
Tex. Homecare Specialists, Inc. v. Triangle Billing, Inc., 43 S.W.3d 106, 110 (Tex. App.-- Beaumont 2001, no pet.). "While a party's intent is determined at the time the party
made the representation, it may also be inferred from subsequent acts." Plunkett, 27
S.W.3d at 613.

 The jury heard testimony that after Chapa purchased the vehicle, appellees failed
to give Chapa copies of the documents evidencing the transaction, and later produced
forged documents, upon which they relied at trial. This case turns on the jury's
determination of the credibility of witnesses. The record contains testimony from
appellees' witnesses which disagrees with Chapa's testimony and attempts to explain her
evidence, but the jury was free, as the factfinder, to believe Chapa and not believe other
witnesses. As an appellate court we must view the evidence in the light most favorable to
the jury's findings, and we must reverse a judgment notwithstanding the verdict if there
is more than a scintilla of evidence to support the findings. Mancorp, 802 S.W.2d at 227. 
The record contains legally sufficient evidence to support the jury's findings of fraud,
violation of the DTPA, and breach of contract. Issue I(A)(2) is sustained. 

 Materiality of the Findings


 Chapa contends the trial court erred by not awarding her the maximum amount she
was entitled to under the jury's verdict. A litigant may assert alternative theories of
recovery, but she is limited to "one satisfaction" of her damages. Stewart Title Guar. Co.
v. Sterling, 822 S.W.2d 1, 7 (Tex. 1991). However, the trial court must render a
judgment which provides "all the relief" to which the party is entitled. Tex. R. Civ. P.
301; Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex.
1988). Appellees argue "the economic loss rule" precludes Chapa from recovering any
damages except those for breach of contract. 

 The jury awarded $7213 (the difference in value between the Limited and the
Highlander) for Gullo's failure to perform as promised under the sales contract, and the
same amount against Gullo as damages for the fraud and for the DTPA violation. The jury
awarded $21,639 against Gullo, but $0 as to Garcia, for Chapa's mental anguish resulting
from the fraud, and the same amount for mental anguish caused by the DTPA violation. 
The jury assessed $8,000 against Garcia as exemplary damages and the same amount as
additional damages for Garcia's DTPA violation. Exemplary damages of $250,000, and
additional damages under the DTPA in that amount, were assessed against Gullo. Chapa's
motion for judgment requested recovery of economic damages of $7213.00 from Gullo;
$21,639.00 in mental anguish damages from Gullo; exemplary damages against Gullo for
$250,000.00; $8,000.00 from Garcia for the DTPA violation; $20,000 for attorneys fees;
pre-judgment interest and costs. 

 Appellees argue that under the holding in Southwestern Bell Telephone Co. v.
DeLanney, 809 S.W.2d 493 (Tex. 1991), Chapa's recovery should be only for breach of
contract. DeLanney involved allegations of negligence and violations of the DTPA based
upon the telephone company's failure to publish the plaintiff's advertisement in its
directory. Id. at 493-94. The Supreme Court held the plaintiff's claim was based on the
failure to perform contractual obligations rather than a duty imposed under tort law. Id.
at 494-95. The Court noted that, in considering whether a plaintiff may recover on a tort
theory, the nature of plaintiff's loss should be examined; "When the only loss or damage
is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." 
Id. at 494. Also, in Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 13-14 (Tex. 1996), the
Supreme Court held an allegation of a failure to fulfill a promise was actionable under a
breach of contract theory but not under the DTPA. The Court noted that it has long been
the law in Texas that "mere nonfeasance under a contract creates liability only for breach
of contract." Id. at 13.

 Fraudulent inducement is a type of fraud claim, with fraud proof requirements: (1)
a material misrepresentation was made; (2) the misrepresentation was either known to be
false when made or was asserted without knowledge of its truth; and (3) the
misrepresentation was intended to be acted on, was relied on, and caused injury. Amouri
v. Southwest Toyota, Inc., 20 S.W.3d 165, 168-69 (Tex. App.--Texarkana 2000, pet.
denied). Fraudulent inducement also requires proof that a contract exists between the
parties. Haase v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001). However, that does not
mean a party fraudulently induced into a contract is limited to recovery on the contract. 
In Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41
(Tex. 1998), the Supreme Court explained that a "DeLanney-type analysis does not apply
to fraud claims." Id. at 45. "[A]n independent legal duty, separate from the existence of
the contract itself, precludes the use of fraud to induce a binding agreement." Id. at 47. 
If a plaintiff presents legally sufficient evidence of each element of fraudulent inducement,
economic loss resulting from the fraud is recoverable under the fraud cause of action. Id. 
 A party's actions may breach duties in tort or in contract, or both simultaneously. 
Hill v. Heritage Resources, Inc., 964 S.W.2d 89, 108-09 (Tex. App.--El Paso 1997, pet.
denied). This case involves more than mere failure to perform contractual obligations. 
The jury heard Chapa's testimony that her signature and the signature of her deceased
husband were forged. Because the jury's fraud and DTPA findings are not immaterial,
and are supported by legally sufficient evidence, we sustain Chapa's issues I(A)(1) and
I(B)(1) and (2).

Mental Anguish


 Chapa argues that the trial court erred in not permitting recovery of the damages
the jury assessed for mental anguish. Mental anguish damages are recoverable under
Chapa's fraud and DTPA causes of action. By cross point, Gullo and Garcia challenge the
legal sufficiency of the evidence of mental anguish damages. 

 In a review of the legal sufficiency of the evidence, the reviewing court must
consider all of the evidence in a light most favorable to the jury's finding and disregard all
contrary evidence and inferences. Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d
269, 274 (Tex. 2002); Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002); Formosa, 960 S.W.2d at 48. If there is more than a scintilla of evidence to support
the finding, then the evidence is legally sufficient. Browning-Ferris, Inc. v. Reyna, 865
S.W.2d 925, 928 (Tex. 1993); Formosa, 960 S.W.2d at 48. "More than a scintilla of
evidence exists when the evidence supporting the finding, as a whole, 'rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions.'" 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)(quoting
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 

 To prevail on a mental anguish claim, a plaintiff must present direct evidence of the
nature, duration, and severity of her mental anguish, and prove a substantial disruption in
her daily routine. Gunn Infiniti, Inc. v. O'Byrne, 996 S.W.2d 854, 860 (Tex. 1999); Saenz
v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996); Parkway Co.
v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). Plaintiff's evidence must demonstrate
more than worry, anxiety, vexation, embarrassment, or anger. Parkway, 901 S.W.2d at
444. While the impossibility of any exact evaluation of mental anguish requires that juries
be given a measure of discretion, that discretion is limited; the amount must fairly and
reasonably compensate for the loss. Saenz, 925 S.W.2d at 614. 

 Chapa testified that she began experiencing mental anguish after her first meeting
with Gullo's sales manager, Dubiski, and that her mental anguish was ongoing as of the
date of the trial. She testified that she cannot eat, vomits constantly, has lost weight,
startles easily, has nightmares, keeps household items to use as weapons for protection,
gets distracted easily, and has difficulty sleeping. In reviewing all of the evidence in a
light most favorable to the jury's findings, the evidence is legally sufficient to support the
jury's finding on the issue of mental anguish. We sustain Chapa's issue I(C), and overrule
appellees' cross appeal issue. 



Exemplary Damages


 Chapa next contends that the trial court erred in disallowing recovery of exemplary
damages. By cross points, Gullo argues that the jury's verdict on exemplary damages was
constitutionally excessive, and that the evidence was factually and legally insufficient to
support the awards against Gullo. 

 Exemplary damages may be awarded if the jury finds by clear and convincing
evidence that the defendant committed fraud. Act of April 11, 1995, 74th Leg., R.S., ch.
19, § 1, sec. 41.003, 1995 Tex. Gen. Laws 108, 110 (amended 2003)(current version at 
Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2004)). Exemplary
damages are intended to punish unlawful conduct and to deter its repetition. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 39-40 (Tex. 1998); Moriel, 879
S.W.2d at 16-17. They must be rationally related to actual damages. Wright v. Gifford-Hill & Co., 725 S.W.2d 712, 714 (Tex. 1987). The ratio of punitive to actual damages
is a measure for courts to use in determining the reasonableness of the punitive damage
award. Tatum v. Preston Carter Co., 702 S.W.2d 186, 188 (Tex. 1986); Foley v. Parlier,
68 S.W.3d 870, 881 (Tex. App.--Fort Worth 2002, no pet.); Ethicon, Inc. v. Martinez,
835 S.W.2d 826, 835-36 (Tex. App.--Austin 1992, writ denied). In deciding the amount
of exemplary damages to assess, the jury was instructed to consider the nature of the
wrong, the character of the conduct involved, the degree of culpability, the situation and
sensibilities of the parties concerned, the extent to which the conduct offended a public
sense of justice and propriety, and net worth. See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.011 (Vernon 1997); Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 

 Appellees address the evidence of forgery of documents in a cross-point attacking
the sufficiency of the evidence to support punitive damages. Because the burden of proof
is clear and convincing evidence, in the legal sufficiency review we "look at all the
evidence in the light most favorable to the finding to determine whether a reasonable trier
of fact could have formed a firm belief or conviction that its finding was true." In the
Interest of J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We are to disregard all evidence a
reasonable factfinder could have disbelieved. In a factual sufficiency review where the
burden of proof is clear and convincing evidence, we "must give due consideration to
evidence that the factfinder could reasonably have found to be clear and convincing." Id. 
"If, in light of the entire record, the disputed evidence that a reasonable factfinder could
not have credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient." Id. 

 Appellees note that "[t]he jury's predicate for the award of punitive damages was
the alleged fraud." They claim the evidence was not clear and convincing, and that Chapa
did not preserve error on the trial court's refusal to submit a spoliation instruction, an issue
not before this Court. Appellees then refer to the testimony of forgery, and argue
essentially that Chapa has not shown how she was harmed. Their argument is as follows: 
 The only possible support for any fraud or punitive damage finding is the
alleged forgery of documents. Chapa alleges a 'We Owe' was forged. 
These exhibits are the same document. Even if forged as Chapa suggests,
how does that put Chapa in a worse position; there is nothing that allegedly
binds Chapa. Chapa admitted no one ever said there was some significance
to Exhibit 7 or to Exhibit 8. Chapa maintained that Gullo Toyota Exhibit 25
was a forgery because the document she signed like Exhibit 25 on which she
says she wrote to describe the Highlander Limited features. Chapa testified
her Exhibit 4, identical to Gullo Toyota Exhibit 25 appeared to contain her
signature. During the trial Chapa wrote her signature. Chapa admitted the
second page of her credit application contained her signature. Chapa also
admitted a receipt contained her signature. Chapa admitted her signature on
her drivers license was genuine. Chapa said sometimes she signs her name
without a "DE." If Gullo Toyota was going to forge her signature why did
they not prepare and forge a document that would be dispositive of Chapa's
claims. Neither Chapa nor her counsel have ever articulated how Chapa was
ever harmed by these alleged forgeries. [record references omitted]. 


Appellees' argument seems to be the forgeries were not dispositive of the claim and did
not cause harm. The argument suggests the evidence of forgery is not credible, but the
jury assesses the credibility of the witnesses, and it is apparent the jury believed Chapa and
found harm. From the evidence of forgeries, the jury could infer fraudulent intent at the
time of the sale. Appellees do not attack the evidence of forgery on any other basis. 

 The jury heard evidence from which it reasonably could conclude appellees replaced
some documents and forged signatures on others. Chapa testified the signature on the
delivery check sheet produced by appellees was that of her husband, who was deceased
prior to the transaction. She produced a We Owe document which supported her version
of events and discredited appellees' position. She testified some of the signatures were
forgeries. Chapa testified that she would not have parted with her money if she had known
appellees intended to deliver a Highlander instead of a Limited. The jury also heard
evidence that the net worth of Gullo was $2,000,000, and that Garcia earned between
$8000 and $12,000 per month. The jury found appellees committed fraud and that the
evidence clearly and convincingly proved appellees' conduct was of a type which triggered
exceptions to the statutory cap on punitive damages. 

 The jury's finding of fraud is supported by Chapa's testimony, and the jury could
reasonably make the finding despite the disputed contrary evidence. We conclude on a
review of the entire record the evidence is legally and factually sufficient to support the
jury's finding of fraud as a predicate to the award of punitive damages. 

 The jury awarded $250,000 in punitive damages against Gullo. Gullo says the
amount is constitutionally excessive. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538
U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); BMW of North America, Inc. v. Gore,
517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The Supreme Court has
instructed courts to consider three guideposts in reviewing a punitive damage award: (1)
the degree of reprehensibility of the misconduct; (2) the disparity between the actual or
potential harm suffered by the plaintiff and the punitive damages award; and (3) the
difference between the punitive damages awarded by the jury and the civil penalties
authorized or imposed in comparable cases. BMW, 517 U.S. at 575. An appellate court
must conduct a de novo review of a trial court's application of these three considerations. 
Campbell, 538 U.S. at 418. 

 Here, the jury found acts of affirmative misconduct and forgery. Although there
is no evidence in the record the misconduct was a regular practice or was more than an
isolated incident, the misconduct found is reprehensible to a degree justifying punitive
damages. 

 The jury found economic damages of $7,213.00 and mental anguish damages of
$21,639 as to Gullo. As in Campbell, Chapa's mental anguish damages arose from
economic harm, not physical assault or trauma. The Supreme Court has said a 4-to-1 ratio
of punitive damages to actual damages may be close to the line of constitutional
impropriety, depending on the circumstances, and has noted a long legislative history of
double, treble, or quadruple damages to deter or punish. See Campbell, 538 U.S. at 425. 
Considering the circumstances in this case, the degree of disparity between the actual
damages and the punitive damages awarded by the jury exceeds what is constitutionally
permissible. 

 Finally, due process requires that a person have fair notice of the severity of the
penalty that may be imposed. Campbell, 538 U.S. at 417. In a due process review an
appellate court must consider civil penalties authorized for comparable misconduct. The
award here exceeds the amount of noncompensatory damages authorized under the DTPA
for the misconduct. While not determinative, comparable penalties provide guidance in
a review of whether a punitive damage award is excessive. 

 Punitive damages serve the goals of deterrence and retribution, not compensation. 
The plaintiff is fully compensated by her actual damage award. We conclude the amount
of punitive damages awarded by the jury against Gullo exceeds that which is necessary to
punish and deter the misconduct. "To the extent an award is grossly excessive, it furthers
no legitimate purpose and constitutes an arbitrary deprivation of property." Id. If an appellate court finds that an award of exemplary damages is excessive, the
court may suggest a remittitur or order a new trial. See Tex. R. App. P. 46.3; Johnson
v. J. Hiram Moore, Ltd., 763 S.W.2d 496, 502-03 (Tex. App.--Austin 1988, writ denied). 
If Chapa files in this Court, within fifteen days from the date of this opinion, a remittitur
of $125,000, the trial court will be ordered to enter judgment for the remainder of the
jury's punitive damage award, i.e. $125,000 in punitive damages. If the suggested
remittitur is not filed, the case will be remanded to the trial court for a new trial on all
issues. See Tex. R. App. P. 46.3; 44.1(b).



 Attorney's Fees


 Chapa contends that the trial court erred in denying recovery of her unsegregated
attorney's fees. Appellees argue the trial court was correct because Chapa failed to
segregate her attorney's fees as to causes of action or parties. 

 An award of attorney's fees must be authorized by statute, rule or contract. Tex.
Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997); Holland v. Wal-Mart Stores,
Inc., 1 S.W.3d 91, 95 (Tex. 1999); International Dairy Queen, Inc. v. Matthews, 126
S.W.3d 629, 630 (Tex. App.--Beaumont 2004, no pet.). The determination as to whether
fees can be segregated is a question of law. Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37,
41 (Tex. App.--Amarillo 1997, writ denied).

 When presenting evidence of attorney's fees, generally attorneys are required to
segregate the fees between the time spent on work for which fees are not recoverable from
the time spent on work for which fees are recoverable. Sterling, 822 S.W.2d at 10-11. 
An exception to the duty to segregate arises when the attorney's fees are incurred in
connection with claims arising out of the same transaction, and which are so interrelated
that their prosecution entails proof of essentially the same facts. Id. at 11; Stewart Title
Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997). 

 Attorney's fees are not recoverable as actual damages in fraud cases. Kneip v.
UnitedBank-Victoria, 774 S.W.2d 757, 759 (Tex. App.--Corpus Christi 1989, no writ). 
However, attorney's fees are recoverable by statute for breach of contract and under the
DTPA. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997); Tex. Bus. &
Comm. Code Ann. § 17.50(d) (Vernon 2002). When a breach of contract is accompanied
by an independent tort, a plaintiff may recover both exemplary damages and attorney's
fees. Hill v. Heritage Resources, Inc., 964 S.W.2d at 108-109. 

 Chapa's claims all arise from the same transaction and are interrelated. Chapa was
required to prove essentially the same facts in pursuing each of her three causes of action. 
See Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994); Formosa, 960
S.W.2d at 47; Act of May 27, 2001, 77th Leg., R.S., ch. 1229, § 27, 2001 Tex. Gen.
Laws 2822-2823 (amended 2003) (current version at Tex. Bus. & Comm. Code Ann. §
17.46 (Vernon Supp. 2004); and Tex. Bus. & Comm. Code Ann. § 17.50 (Vernon 2002)). 
Given these circumstances, Chapa was not required to segregate her attorney's fees. 

 The only authority cited by Gullo and Garcia to support their assertion that the trial
court was correct in disallowing Chapa's recovery of attorney's fees is Aetna Cas. & Sur.,
944 S.W.2d at 41, which held that the determination as to whether attorney's fees can be
segregated is a matter of law for the court to decide. Gullo and Garcia cite no authorities
indicating that the trial court's denial of Chapa's attorney's fees was proper, nor do they
cite any authorities as to the factual or legal insufficiency of Chapa's evidence of attorney's
fees. Gullo and Garcia do contend the testimony offered to support attorney's fees was
conclusory, but the record reveals that Chapa's attorney's testimony was detailed, factual,
and supported his opinion. Chapa's attorney testified that 131.3 hours had been spent
preparing the case which included interviews, meetings with Chapa, factual investigation,
preparation and filing of the lawsuit, discovery, mediation, motions, briefing, pretrial
conferences, and trial. He further testified that he was asking for attorney's fees at his
usual rate of $135 an hour, which he stated is a reasonable rate for attorneys of comparable
experience in Montgomery County. Chapa's attorney testified that the fee Chapa's
previous attorney charged for attending the meeting with Gullo was reasonable and
necessary. We conclude the attorney's fee award is supported by legally sufficient
evidence. The trial court erred in denying Chapa recovery of attorney's fees. We sustain
Chapa's issue I(E).

Failure to Enter Judgment against Garcia


 Chapa's final contention is that the trial court erred in not allowing her to recover
against Garcia after she had withdrawn her previous election not to do so. Appellees argue
that, because the economic loss rule limited Chapa to recovery for breach of contract, the
trial court was correct in denying recovery against Garcia. We have rejected appellees'
reading of DeLanney, 809 S.W.2d at 493. DeLanney does not limit Chapa's recovery to
merely breach of contract damages. 

 In her motion for judgment, Chapa elected not to recover a judgment against
Garcia. However, before the Court entered judgment, Chapa filed a written pleading
withdrawing her election. Despite Chapa's written withdrawal of her election, the trial
court entered judgment that "Although the jury returned a verdict against Brien Garcia,
Nury Chapa has elected not to have a judgment entered against Brien Garcia." The trial
court erred in rendering this "consent" judgment without consent. See Padilla v.
LaFrance, 907 S.W.2d 454, 461 (Tex. 1995); Kennedy v. Hyde, 682 S.W.2d 525, 528
(Tex. 1984); Burnaman v. Heaton, 150 Tex. 333, 240 S.W.2d 288, 291 (1951). Because
Chapa withdrew her election not to recover against Garcia before the judgment was
entered, the trial court erred in entering judgment denying recovery against Garcia. 
Chapa's Issue II is sustained.

Conclusion


 On appellant's filing of the suggested remittitur, the trial court's judgment will be
reversed and the case will be remanded to the trial court for entry of a judgment in
accordance with the jury's verdict, and consistent with this opinion, in favor of Chapa in
the following amounts: $7213.00 for economic damages against Gullo and Garcia;
$21,639 against Gullo for mental anguish; $125,000 exemplary damages against Gullo;
$8,000 DTPA damages against Garcia; $20,000 attorney's fees; prejudgment interest; and
costs. If the suggested remittitur is not filed, the judgment will be reversed and the case
remanded for a new trial on all issues. 

 REVERSED AND REMANDED. 
 PER CURIAM 


Submitted on May 13, 2004

Opinion Delivered August 26, 2004

 

Before McKeithen, C.J., Burgess and Gaultney, JJ.