JIM WALTER HOMES, INC. and
Mid-State Homes, Inc.,
Appellants,

v.

Carl E. SAMUEL, Appellee.

No. 09–84–331 CV.

Court of Appeals of Texas,
Beaumont.

Dec. 12, 1985.

Rehearing Denied Jan. 2, 1986.

Charles C. Murray, McAllen, for appellants.

Floyd Addington, Jasper, for appellee.

## OPINION

BURGESS, Justice.

On October 27, 1978, Carl Samuel entered into a retail installment contract with Jim Walter Homes, Inc. (Jim Walter) for the construction of a home. The home was to be constructed on property owned by Mr. Samuel. The total cash price, excluding finance charges, was $18,950.00, payable in 216 monthly installments of $189.40. Under the contract, the first installment was due February 5, 1979. Mr. Samuel also signed an installment mechanics note and a mechanics lien contract with power of sale.

Jim Walter began construction and in April, 1979, Mr. Samuel began making payments on the home. According to Mr. Samuel, he began making payments because, although he did not feel the home was completed, he was assured it would be completed. Mr. Samuel began to move some of his belongings into the home and began to perform certain "finish" work such as interior painting and floor covering. Mr. Samuel continued to make payments on the home until September, 1980. When he contacted an attorney because of problems he was encountering with Jim Walter completing the home, the attorney advised Mr. Samuel to cease making payments. The attorney then drafted a "demand" letter to Jim Walter demanding completion of the home and refund of the monthly payments.

In the meanwhile, Jim Walter Homes had transferred the contract to Mid-State Homes, Inc. (Mid-State), a subsidiary of Jim Walter Corporation.[1] In January, 1981, Mid-State informed Mr. Samuel he was in default on the note and advised him to bring the note current before February 3, 1981. They further advised that a trustee's sale would be conducted on that date. Mr. Samuel did not comply and a substitute trustee conveyed the home to Mid-State and subsequently to a bona fide third party purchaser.

Mid-State then gave Mr. Samuel notice that his belongings had been removed from the home and were in storage. Mr. Samuel, through a representative, attempted to locate the belongings, but they were never recovered.

Intertwined in this situation was the question of a completion certificate. This was a certificate which was to be signed by the homeowner signifying the home was complete. Mr. Samuel maintained the home was never completed and he did not, at any time, sign a completion certificate. A completion certificate, purportedly signed by Mr. Samuel, did appear in Mr. Samuel's file at Jim Walter.

Mr. Samuel filed suit against Jim Walter and Mid-State claiming the written warranty that the home would be completed in a good, substantial, workmanlike manner had been breached, that Jim Walter had represented the goods or services were of a particular standard, quality or grade or the goods were of a particular style or model when, in truth and fact, they were not, that Jim Walter had represented work or services had been performed when such work or services were not performed, and that the defendants took advantage of his lack of knowledgeability, experience and capacity to a grossly unfair degree, resulting in a gross disparity between the value received by him and the consideration paid by him. All of these allegations were claimed to be in violation of the Texas Deceptive Practices Act. Mr. Samuel further alleged a

1. Jim Walter Homes, Inc. was also a subsidiary of Jim Walter Corporation.

fraud had been committed and sought exemplary damages. Mr. Samuel claimed actual damages of $2500.00 for the loss of his land, $3219.80 in payments made to Jim Walter or Mid-State, and $7500.00 for the loss of his furniture. He also sought rescission and cancellation of the various instruments.

After a jury trial, the court entered judgment for Mr. Samuel awarding him actual damages of $13,768.80, exemplary damages of $75,000.00 and attorney's fees. Both defendants appeal bringing forth eighteen points of error.

■ Points of error numbers one through six deal with the exemplary damages. In order for the exemplary damages to stand, they must be based upon the action for fraud. Exemplary damages are not recoverable for breach of contract unaccompanied by an independent tort. *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629 (1943); *Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex. 1981).

"The elements of actionable fraud in Texas were stated in *Wilson v. Jones*, 45 S.W.2d 572, 574 (Tex.Comm.App.1932, holding app'd) as follows:

(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury."

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). The question of fraudulent conduct was put before the jury in the following special issue:

SPECIAL ISSUE NO. 10

Do you find from a preponderance of evidence that such action of the completion slip or the failure to complete was fraudulent?

ANSWER: "We do" or "We do not".

ANSWER: "We do 12"

The initial inquiry concerns the forging of the completion slip. The jury found the defendants forged the completion slip and "caused [it] to be included in plaintiff's records". Even so, there is no evidence this is an actionable fraud. There is no evidence Mr. Samuel relied upon the completion slip or suffered any injury because the completion slip had been forged.

■ The second inquiry concerns the failure to complete the home. The jury found the defendants had failed to complete the home as the contract provided within a reasonable time. The mere failure to perform a promise is not itself evidence of an intent not to perform when the promise was made. *Porter v. Irvine*, 658 S.W.2d 711 (Tex.App.—Houston [1st Dist.] 1983, no writ). There is absolutely no evidence as to any intent not to complete the home when the contract was made. The awarding of exemplary damages was not justified either legally or factually. Points of error numbers one through three are sustained. Points of error numbers four through six are not reached.

The trial court, in its judgment, stated Mr. Samuel had elected to receive the exemplary damages without waiving any damages occuring under the Deceptive Trade Practices Act. This court having reversed the awarding of exemplary damages, the trial court may enter judgment in accordance with the deceptive trade practice cause of action. *See Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977).

■ Points of error numbers seven through ten complain of the trial court's granting rescission of the contracts. A mere breach of contract is insufficient to support rescission. *Crabtree v. Burkett*, 433 S.W.2d 9 (Tex.Civ.App.—Beaumont 1968, no writ). There being no evidence to support the fraud, that portion of the judgment granting rescission of the contracts between Mr. Samuel and Jim Walter and/or Mid-State is reversed. Point of error number seven is sustained. Points of error numbers eight through ten are not reached.

Point of error number eleven alleges the trial court erred in awarding damages for the loss of the land and also declaring void the trustee's deed pursuant to the foreclosure action. Appellants are quite correct that to award both amounts to a double recovery. Upon remand, Mr. Samuel should be required to elect the remedy desired. This point of error is sustained.

Points of error numbers twelve through fifteen question the legal and factual sufficiency of the jury's findings concerning the completion of and quality of the construction of Mr. Samuel's home. There is ample evidence to sustain the jury's finding. Mr. Samuel testified to all the defects he observed. No witnesses were brought by Jim Walter to refute Mr. Samuel's testimony. These points of error are overruled.

Point of error number sixteen complains of the jury's finding that no trustee's sale took place. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. They can believe all or part of a witness' testimony. The jury obviously chose to disbelieve the witness who said the trustee's sale took place and chose to believe the witness who said he did not observe any such sale take place. This point of error is overruled.

Point of error number seventeen challenges the award of actual damages. This suit, although based on several theories, was, in actuality, a Deceptive Trade Practice cause of action. Mr. Samuel was entitled to recover his actual damages as a result of the various violations of the act. *Smith v. Baldwin*, 611 S.W.2d 611 (Tex. 1980). All of the elements of the damage award, the loss of land, the loss of his furniture and household belongings and the monthly payments made to Jim Walter were actual damages suffered by Mr. Samuel. Furthermore, appellants' objection to the special issue was, "it states an improper measure of damages". This objection is to general to preserve any error. *TEX.R.*

*CIV.P. 274.* Point of errror number seventeen is overruled.

The final point of error complains of the jury's finding that Mr. Samuel did not fail to mitigate damages. Appellants do not quarrel with the manner in which the issue was given nor the instruction. Once again, the jury heard all the evidence about the defects, about Mr. Samuel's knowledge and what steps, if any, he took to mitigate. We are unable to say the jury's answer is incorrect. This point of error is overruled.

The judgment of the trial court is affirmed in part, and reversed in part. The cause is remanded to the trial court with instructions to enter a judgment in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.