In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-189 CV


____________________



RON L. FRAZE and EASTERN DEVELOPMENT NO. 1, INC., Appellants


 

V.



JOEY PFLEIDER D/B/A JOEY PFLEIDER LOGGING, Appellee






On Appeal from the 260th Judicial District Court


Orange County, Texas


Trial Cause No. D-030184-C






MEMORANDUM OPINION


 Joey Pfleider, d/b/a Joey Pfleider Logging, sued Ron L. Fraze and Eastern
Development No. 1, Inc., for breach of contract and fraud. The jury found the contract
was breached and Fraze committed fraud. Exemplary damages were assessed against
Fraze. Fraze and Eastern raise fourteen issues in this appeal. We reverse the trial court's
judgment and remand for a new trial on all claims. 


The Dispute


 The contract at issue concerns the clearing by Pfleider of land owned by Fraze. 
Fraze directs the operations of Eastern. He operates several companies at the same street
address in Plano, using eight different phone lines. Eastern was involved in building the
first phase of two planned apartment complexes in Orange, Texas. The corporation has
little present value. Fraze individually owned the land where phase two of the project was
to be built. He intended to sell the land to the Orange Housing Authority, and to begin
phase two of the apartment project with the financing obtained from the land sale. 
According to Fraze, the first step was to obtain approval of the apartment project from the
Housing Authority. Engineering and architectural work could then commence, bonds
would "close," and the project would begin.

 Pfleider, a logging contractor, purchased the timber on Fraze's land. Fraze then
hired Pfleider by separate contract to clear the land of stumps and debris. Pfleider drafted
the clearing contract that is the subject of this litigation. (1) When Fraze received the
proposed contract, he added a handwritten provision that stated "First payment made after
closing of land and project started." 

 Fraze did not speak with Pfleider during the contract negotiations. Instead, Don
Kreymer, Eastern's liaison in Orange, negotiated with Pfleider. Pfleider testified he
believed Kreymer was the agent of Fraze and Eastern. Kreymer testified he performed site
work, zoning, and land work for Eastern and two other companies owned by Fraze. His
duties included arranging for the clearing to be done by Pfleider.

 As instructed by Fraze, Kreymer told Pfleider to prepare the contract for "Ron
Fraze, president, Eastern Development." Kreymer knew Eastern's name to be "Eastern
Development." Fraze testified that, although Eastern was often called "Eastern
Development," it is a corporation and its official name is Eastern Development No. 1, Inc. 
 The timber contract was with Fraze individually, and Pfleider believed the clearing
contract was also with Fraze. Pfleider testified Kreymer told him Ron Fraze owned the
property "and that's who I was dealing with." Pfleider had never heard of a corporation
called "Eastern Development No. 1, Inc." before the lawsuit. He testified Kreymer did
not tell him Eastern Development was a corporation. 

 When Pfleider received the contract with Fraze's handwritten addition, he asked
Kreymer to explain the addition. Pfleider testified Kreymer told him "they had not . . .
had their closing and that they had to shuffle some paperwork around or do something to
get prepared to close and it would be 60 to 90 days." Pfleider testified: "And then I asked
him -- I said, 'Now, look, I can't drag this thing out forever. Is it going to be 60 or 90
days for sure?' And he said 'It's not going to be any problem. You'll have your money
in 60 to 90 days.' And so, with his assurance, I said 'Fine.'" Pfleider believed he would
be paid sixty to ninety days after he finished the work. He testified: "Mr. Kreymer, Mr.
Fraze's employee or agent or whatever, told me it would be 60 or 90 days; and I trusted
him. He seemed like a reasonable guy. They had apartments . . . all over. And I
assumed that they did this all of the time and it wouldn't be a problem getting paid." In
his deposition testimony, Kreymer denied making any representation to Pfleider concerning
when he would be paid. He testified payment on this type of agreement typically occurred
within sixty to ninety days. At trial, however, Kreymer said "I don't know if it was
exactly that day; but right around that time, I did make the comment that -- because that
was typically how they were done and closed in the past and that it was 60 to 90 days is
the norm because he -- he did ask. I don't know if it was that day or the next day or
within a couple of days." Fraze denied authorizing Kreymer to tell Pfleider when he could
expect to be paid. 

 Testifying by deposition, Frank Anderson, the executive director of the Housing
Authority, said that in October, 2001, the Authority did not have any plans to develop the
property. Anderson also testified there have been no negotiations since then between Fraze
or any of his companies and the Housing Authority to build any apartment project. 
Anderson further stated there was currently no plan to develop the project. Financing
could not be obtained. On cross-examination, Anderson qualified his statement, saying

 what I meant by plans was, you know, something concrete to know exactly
when we were going to do what from there because right now, everything
that was discussed was just trying to find a way to finance it. And when I
say plans, I meant, you know, actually to start, . . .to get the bonds sold and
financing mechanism.


At trial, however, Anderson testified he has been involved in discussions about obtaining
financing for phase two. He estimated he had met with Fraze three times in the last three
years. When asked whether the Housing Authority would be willing to contract with
anyone other than Fraze, Anderson responded "Well, I can't really say that because I have
been talking to him all along about that; and, you know, we somewhat had an agreement." 
Anderson testified two market studies had been done in an attempt to obtain financing for
phase two. According to Anderson, the last meeting with Fraze's company regarding the
project was six to eight months before trial.

 Anderson testified nothing could be done toward completing the project because of
the pendency of Pfleider's lawsuit. Anderson said the Housing Authority would not have
purchased the land from Fraze if it had not intended to develop apartments. He also
testified the Housing Authority never had a contract with Fraze to build phase two. No
plans exist to develop the property within the year. 

 Pfleider was unable to begin the clearing work for several months due to weather
conditions. He hired workers and rented a trackhoe, a six-inch water pump, two timber
jack log skidders, and a D8 dozer with a rake to complete the job. After completing the
work on May 29, 2002, he called Kreymer and asked him to inspect it. Kreymer told
Pfleider the work looked fine, and Pfleider began asking Kreymer when he would be paid. 
Each time he contacted Kreymer he was told payment would be forthcoming in sixty to
ninety days. Pfleider subsequently learned Fraze had sold the land to the Housing
Authority while Pfleider was clearing the land. 

 Kreymer told Pfleider he was no longer working for Fraze or Eastern. When
Pfleider began calling Kreymer, Kreymer still worked for Eastern and Fraze. 
Subsequently, Kreymer worked for Eastern and Fraze on a consulting basis. Kreymer
testified he knew Pfleider had not been paid because Pfleider had contacted him several
times. 

 Fraze testified Pfleider tried to contact him by telephone several times to collect his
money. Fraze did not speak with him. Fraze instructed his secretary to tell Pfleider to
contact Kreymer. According to Pfleider, when Pfleider called Kreymer, Kreymer said
"Well, [Fraze] told me he paid you."

 Pfleider traveled to Plano and, using an assumed name, asked to see Fraze. Pfleider
testified that during their meeting Fraze again promised payment in sixty to ninety days,
stating that bonds had to be sold to close the project. Fraze denied promising payment in
sixty to ninety days but he admitted telling Pfleider he would be paid. At the meeting,
Pfleider offered to enter into additional timber deals with Fraze. Pfleider testified Fraze
admitted that he had not handled the matter correctly, and that he should have called
Pfleider.

 Fraze testified he contracted with Pfleider only because Pfleider agreed to the
contingency. Pfleider testified if he had understood payment for the clearing work was to
be contingent upon whether bonds were sold, he would not have entered into the
agreement. He has not paid all the bills he incurred in completing the work.

 Fraze admitted there is no dispute as to the amount of money due Pfleider under the
contract. Fraze opined that his handwritten addition to the contract meant Pfleider would
not be paid until financing was obtained for the project. He said he is still working to
obtain financing for the project. 

 When Fraze sold the property to the Housing Authority, he signed an indemnity
agreement indicating no debts were owed on the property. Anderson testified he was
unaware Pfleider had a contract to clear the land. He relied upon Fraze's statement that
no liens or money were owed on the property when the Housing Authority purchased it.
Fraze stated he did not disclose the clearing agreement because he felt the money was not
yet owed. 

 The parties stipulated Pfleider performed the contract in a good and workmanlike
manner and the contract amount is $25,000. The trial court found as a matter of law that
Fraze's handwritten addition to the contract was not a condition precedent. 

Exemplary Damages


 In issues one and three, appellants argue the trial court erred in conditioning the
exemplary damages jury question on a breach of contract finding rather than on the fraud
finding. In issue two, appellants contend the trial court erred by failing to provide a "clear
and convincing evidence" instruction with the question on exemplary damages.

 Exemplary damages are not recoverable for breach of contract. Jim Walter Homes,
Inc. v. Samuel, 701 S.W.2d 351, 353 (Tex. App.--Beaumont 1985, no writ). The jury's
verdict, in which the award of punitive damages was predicated upon the breach of
contract question, does not support the trial court's judgment awarding exemplary
damages. 

 Furthermore, an instruction as to the "clear and convincing evidence" burden of
proof is statutorily required. Section 41.003(b) of the Civil Practice and Remedies Code
states "[t]he claimant must prove by clear and convincing evidence the elements of
exemplary damages as provided by this section. . . ." Tex. Civ. Prac. & Rem. Code
Ann. § 41.003(b) (Vernon Supp. 2005). Section 41.012 of the Civil Practice and
Remedies Code provides: "In a trial to a jury, the court shall instruct the jury with regard
to Sections 41.001, 41.003, 41.010, and 41.011." Tex. Civ. Prac. & Rem. Code Ann.
§ 41.012 (Vernon 1997). 

 Issues one, two, and three are sustained to the extent the issues raise charge error.

Sufficiency of the Evidence of Fraud


 In a multifarious issue four, appellants contend in part the jury's fraud finding is
"unsupported by the evidence." We interpret this as a challenge to the factual sufficiency
of the evidence to support the finding of fraud, and as requiring a review and detailing of
the evidence relevant to the issue. See Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986). Sustaining a factual sufficiency challenge to a jury finding results in setting
aside the finding and ordering a new trial on the claim. Garza v. Alviar, 395 S.W.2d 821,
823 (Tex. 1965). 

 Fraudulent inducement is a type of fraud claim. A plaintiff must prove (1) a
material misrepresentation was made, (2) the misrepresentation was either known to be
false when made or was asserted without knowledge of its truth, and (3) the
misrepresentation was intended to be acted on, was relied on, and caused injury. Amouri
v. Southwest Toyota, Inc., 20 S.W.3d 165, 168-169 (Tex. App.--Texarkana 2000, pet.
denied). Fraudulent inducement also requires proof that a binding contract exists. Haase
v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001). 

 In Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960
S.W.2d 41, 47 (Tex. 1998), the Supreme Court explained that "an independent legal duty,
separate from the existence of the contract itself, precludes the use of fraud to induce a
binding agreement." If a plaintiff presents sufficient evidence of each element of
fraudulent inducement, economic loss resulting from the fraud is recoverable under the
fraud cause of action. Id. A party's actions may breach duties solely in tort or in contract,
or in both simultaneously. Hill v. Heritage Resources, Inc., 964 S.W.2d 89, 108 (Tex.
App.--El Paso 1997, pet. denied). 

 Failure to perform as promised, standing alone, is no evidence of fraud, although
it may be considered with other facts to establish fraudulent intent. Spoljaric v. Percival
Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986). "'Slight circumstantial evidence' of fraud,
when considered with breach of promise to perform, is sufficient to support a finding of
fraudulent intent." Id.; see also Southeast Texas Homecare Specialists, Inc. v. Triangle
Billing, Inc., 43 S.W.3d 106, 110 (Tex. App.-- Beaumont 2001, no pet.). "Proof that a
defendant made a statement knowing of its falsity or without knowledge of its truth may
be proved by direct or circumstantial evidence." Burleson State Bank v. Plunkett, 27
S.W.3d 605, 613 (Tex. App.--Waco 2000, pet. denied). The party's intent at the time the
party made the representation is the relevant issue, but that intent may be inferred from
proof of subsequent acts. Id. 

 No payment has been made on the clearing contract. Pfleider's performance of the
work and the amount of the contract are not in dispute. Fraze personally owned the land
that was cleared. The jury heard evidence Fraze told Kreymer he had already paid
Pfleider. However, when Pfleider called Fraze, he was referred back to Kreymer. The
jury heard inconsistent testimony from Kreymer, who initially denied making any
representation to Pfleider as to when he would be paid, but admitted at trial that, when
Pfleider asked about Fraze's handwritten addition to the contract, he told Pfleider that
payment would occur within sixty to ninety days. Pfleider testified Kreymer repeatedly
told him to expect payment within sixty to ninety days. Pfleider testified that when he met
with Fraze in Plano, Fraze promised payment in sixty to ninety days. The jury also heard
inconsistent testimony from Anderson, who testified by deposition that no negotiations
were pending between the Housing Authority and Fraze or his companies, but testified at
trial that negotiations were ongoing. 

 Pfleider testified he relied on Kreymer's representation, and he would not have
entered into the contract had he understood the true circumstances. However, the jury
found Fraze, not Kreymer, committed fraud. Some circumstantial evidence suggests Fraze
may have known the representation was made, but there is insufficient evidence he knew
of the representation before the contract was signed. No evidence was presented that Fraze
personally made any representation to Pfleider before the contract was signed other than
the written promises in the contract. The evidence establishes the representation that
payment would be made within 90 days was false, but there is insufficient evidence
Kreymer, who made the representation, knew the statement was false when he made it. 
After the work was complete, Fraze avoided Pfleider and referred him to Kreymer. 
Kreymer was authorized to speak with Pfleider concerning the time of payment after the
contract was signed. There is contradictory evidence as to whether Kreymer had the
authority to make the representation before the contract was signed. The jury was not
asked to find that he was authorized by Fraze to make this representation.

 Kreymer testified he based the representation on his understanding of when payment
usually would be made. Pfleider makes no claim Kreymer committed fraud. Kreymer
apparently made the representation to explain the handwritten addition to the contract. 
Fraze denied authorizing Kreymer's representation. Having reviewed the evidence which
supports and which is contrary to the jury's finding, we are to set aside the finding only
if the evidence that supports the jury finding is so weak as to be clearly wrong and
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We conclude the
evidence in the record of this trial is insufficient to establish Fraze knew of the
representation before the contract was signed. Issue four is sustained to this extent. We
set aside the jury finding and order a new trial on the fraud claim. See Garza, 395 S.W.2d
at 823. 

Attorney's Fees


 In issue five, appellants argue attorney's fees are not recoverable on the breach of
contract claim because the claim was not presented as required by section 38.002(2) of the
Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. §
38.002(2)(Vernon 1997). We disagree. Presentment may be oral or written. Panizo v.
Young Men's Christian Assoc. of Greater Houston Area, 938 S.W.2d 163, 168 (Tex.
App.--Houston [1st Dist.] 1996, no writ). Pfleider presented his contract claim to
appellants numerous times. The amount of the contract claim is admitted by appellants and
is not in dispute. Issue five is overruled. 

 In issue six, appellants complain the attorney's fees were not segregated. The
question to the jury on attorney's fees was not limited to the contract claim. Pfleider's
counsel testified he could segregate his fees between the various claims. The jury's award
of attorney's fees must be limited to the contract claim. See Stewart Title Guar. Co. v.
Sterling, 822 S.W.2d 1, 10 (Tex. 1991) (party must show fees relate to claim for which
attorney's fees are recoverable). Issue six is sustained as to this charge error. 

Disjunctive Submission 


 In issue ten, appellants contend the trial court erred in submitting the breach of
contract question disjunctively. Question two asked the jury "Did either RON FRAZE or
EASTERN DEVELOPMENT NO. 1 INC. fail to comply with the agreement?" 
Appellants objected to the disjunctive form of the question and proposed questions which
inquired separately about each defendant's failure to comply. Appellants say the jury's
answer is ambiguous as to which defendant breached the contract. See J & C Drilling Co.
v. Salaiz, 866 S.W.2d 632, 640-41 (Tex. App.--San Antonio 1993, no writ). 

 Pfleider responds that both parties are liable for either party's failure to comply
because Fraze did not disclose that Eastern was a corporation and the contract did not
reveal Eastern's corporate status. Question one of the charge was as follows: "At the time
the agreement was signed by the parties, did the [Plaintiff], JOEY PFLEIDER, know that
RON FRAZE was acting as the President of Eastern Development, No. 1, Inc.?" The jury
answered "no." 

 However, as part of issue nine, appellants contend the trial court also erred in
submitting question one to the jury because the question only asked about whether Pfleider
knew and did not ask whether Pfleider had "reasonable grounds to know." Pfleider
contends appellants failed to preserve any error in the submission of issue one. Appellants
objected to question one and orally proposed the following alternate question: "Did Joey
Pfleider have actual knowledge or reasonable grounds to know of Eastern Development
No. 1's existence or identity[?]" We conclude appellants preserved error. See State Dep't
of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (test for
preservation of charge error is whether party timely and plainly made the trial court aware
of its complaint and obtained a ruling). 

 An agent must disclose both his representative capacity and the identity of the
principal to avoid personal liability on a contract. A to Z Rental Ctr. v. Burris, 714
S.W.2d 433, 435 (Tex. App.--Austin 1986, writ ref'd n.r.e.). The test of the adequacy
of an agent's disclosure of the principal is whether the other party knew or had reasonable
grounds to know of the principal's existence or identity. Id.; see also Williston on
Contracts § 35.35 (4th ed. 1999). Question one asked whether Pfleider had actual
knowledge; the jury was not asked whether he had reasonable grounds to know of the
principal's existence or identity. Without a proper jury finding of undisclosed principal,
the disjunctive submission leaves the jury's answer to question two ambiguous. See J &
C Drilling Co., 866 S.W.2d at 640. See Tex. R. App. P. 44.1(a)(1). Issues nine and ten
are sustained to the extent of this charge error.


Condition Precedent


 In issue twelve, appellants argue the trial court erred by failing to include their
proposed jury question on satisfaction of "all applicable conditions precedent." Appellants
argue Fraze's handwritten insertion created a condition precedent to performance. (2) A
condition precedent to performance is an occurrence that must happen before there is a right
to performance. Cal-Tex Lumber Co., Inc. v. Owens Handle Co., Inc., 989 S.W.2d 802, 809
(Tex. App.--Tyler 1999, no pet.). 

 The proper interpretation and construction of an unambiguous contract is a matter of
law. Columbia Gas Transmission Corp. v. New Ulm Gas Ltd., 940 S.W.2d 587, 589 (Tex.
1996). Specifically, the issue of whether a contractual provision is a condition precedent is
a question of law for the court. Walden v. Affiliated Computer Servs., Inc., 97 S.W.3d 303,
326 (Tex. App. --Houston [14th Dist.] 2003, pet. denied). We review de novo the trial court's
legal conclusion that the provision added by Fraze was not a condition precedent. Town of
Flower Mound v. Stafford Estates, L.P., 71 S.W.3d 18, 26 (Tex. App.--Fort Worth 2002)
aff'd, 135 S.W.3d 620 (Tex. 2004). 

 Courts construe contracts to avoid forfeiture by condition precedent when another
reasonable reading of the contract is possible. Mar-Len of Louisiana, Inc. v. Gorman-Rupp Co., 795 S.W.2d 880, 887 (Tex. App.--Beaumont 1990, writ denied). Terms such
as "if", "provided that", "on condition that", or similar conditional phrases are sometimes 
included in a contract to establish a condition precedent. Criswell v. European Crossroads
Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990). If this language is not used by
the parties, this is at least some indication that a provision should be construed as a
covenant rather than a condition precedent. Id. ("While there is no requirement that such
phrases be utilized, their absence is probative of the parties['] intention that a promise be
made, rather than a condition imposed."). 

 Under the provision Fraze added to the clearing contract, the land sale was to occur
and the project to start before the first payment. (3) If the land were sold and the project
started before completion of the clearing work, the first payment would be made when half
the clearing work was completed. The land was sold before the clearing was completed. 
However, the project was not started and is not currently planned. Anderson, the
representative of the Housing Authority, testified the project would not be started while
this lawsuit is pending.

 Fraze opined that the obligation to pay for the clearing work will not arise until the
project is started. Under this construction, the obligation to pay for the clearing work
would be contingent on his success in starting the project. A forfeiture would result if the
project is not started. We do not accept this construction as reasonable. 

 The provision may be construed reasonably as a designation of when, rather than
if, payment would be made. This construction recognizes the parties' underlying incorrect
assumption the project certainly would be started eventually and within a reasonable time. 
The contract provided for payment when that event occurred. The debt for the clearing
services arose and became absolute on completion of the clearing work, but the future
event designated for the time of payment has not occurred and, according to the Housing
Authority, certainly will not occur while this litigation is pending. When, as here, the
parties intend that a debt be absolute and fix a future event as a time for payment, yet the
parties do not address the possibility the subsequent event will not occur, the law generally
requires payment within a reasonable time should the event not happen as contemplated. 
Bledsoe v. Miller, 496 S.W.2d 140, 142 (Tex. Civ. App.--El Paso, 1973, no writ) (quoting
Wisznia v. Wilcox, 438 S.W.2d 874 (Tex. Civ. App.--Corpus Christi 1969, writ ref'd
n.r.e.)). Since the parties failed to provide for the possibility the event would never occur,
the law gives effect to the intent of the parties by implying a promise to pay within a
reasonable time. We agree with the trial court's finding the handwritten provision added
by Fraze was not a condition precedent to the obligation to pay for the work. Issue twelve
is overruled.

 We reverse and remand for a new trial on all claims. We need not address the
remaining issues as they would result in no greater relief than a new trial. 

 REVERSED AND REMANDED FOR NEW TRIAL.


 

 DAVID GAULTNEY Justice


Submitted on February 24, 2005 

Opinion Delivered May 26, 2005


Before Gaultney, Kreger and Horton, JJ. 
1. The October 29, 2001 clearing contract read as follows:

 "It is agreed that Joey Pfleider Logging, herein called contractor, will dig, push, rake,
and pile stumps and debris on 10 acre site on Sikes Road, for Eastern Development, herein
called owner.

 For the sum of $25,000 dollars contractor will pile all debris 2" in diameter and larger,
24" inches and longer. No hand picking will be done. Work to start as soon as weather
conditions permit.

 Contractor agrees to perform all work in a workman like manner. 

 Owner agrees to pay contractor in two equal payments of $12,500. The first after
contractor notifies owner that ½ of the work is completed and second after notifying owner
work has been completed. [handwritten insertion: First payment made after closing of land
and project started.]

 /S/ Eastern Development

 Ron Fraze, President

 /S/ Joey Pfleider

 Joey Pfleider Logging"
2. Appellants do not contend any other contract terms created a condition precedent. 
3. The parties do not assert any oral modification of the contract.